## Littleton's Appeal.
## Neill's Appeal.

| 93  177 | | 170  591 |

1. C., a widow, died in 1859, leaving three minor children and possessed of certain real and personal property. In her will she bequeathed certain legacies and annuities, and appointed H. her executor and trustee. In 1863 H., as "executor and trustee," petitioned the Orphans' Court, alleging that the personal estate was insufficient to pay the legacies and annuities, and that they were claimed to be a charge on the real estate. The court issued citations and a number of parties interested filed answers. No answer was filed for the minor children, but an appearance was entered of record by the counsel of their guardian, which counsel also argued the question for some of the annuitants. A decree was made in accordance with the petition, and the real and personal estate of the decedent in charge of the guardian was transferred to H., the executor. H. paid the legacies and annuities in full, the taxes, and also the income tax, out of the funds in his hands. When the eldest child attained her majority H. filed his account and the children of decedent excepted to all credits for expenses in the Orphans' Court proceedings in 1863, on the ground that the court had no jurisdiction, and to the payments on account of income tax    Held, that the court had jurisdiction, as making the executor a party did not avoid the proceeding for want of jurisdiction if the legatees were in point of fact parties. Held, further, that the income tax was properly paid by the executor and trustee.
2. A petition for a bill of review was filed after the eldest minor attained her majority in 1876, by said minor and the guardian of the others. Held, that the bill was too late in point of time.
3. PER CURIAM.—With reference to bills of review courts of equity govern themselves by the analogy of the law in regard to writs of error. Perhaps in this state it would be wise to follow the rule established by the legislature as to review of final decrees confirming the original or supplementary account of any executor, administrator or guardian by the Act of October 13th 1840, which is five years.

January 27th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeals from the Orphans' Court of *Philadelphia county:* Of January Term 1878, Nos. 199 and 200.

Appeal of William E. Littleton, guardian of Walter and Herbert Cox, minors, and of R. R. Neill and Mary C. his wife, in right of said wife, from the decree of the court dismissing exceptions to and confirming the adjudication of the account of Charles Hewson, executor of the estate of Mary R. Cox, deceased.

Appeal of R. R. Neill and Mary C. his wife, in right of said wife, and of William E. Littleton, guardian of Walter and Herbert Cox, minors, from the decree of the court dismissing the petition

12 NORRIS—12

for a bill of review of the proceedings in the estate of Mary R. Cox, deceased.

It appeared that Mary R. Cox, the widow of Hewson Cox, died October 16th 1859. She had a separate estate derived solely from the estate of her father in which she had only a life interest. She owned certain other property derived from her aunt Mrs. Ricketts. This property consisted of both real and personal estate. She left surviving her three minor children. James Markoe was appointed their guardian. He survived until the summer of 1876, when he died; whereupon William E. Littleton was appointed guardian of the estate of two of the minors, Walter and Herbert Cox, their sister Mary, now Mrs. Neill, having attained her majority.

On the 15th day of October 1859, the day previous to her death, decedent executed her last will and testament, with a codicil attached bearing the same date. Both were duly proved, and letters testamentary were granted to the executor, the present accountant, on November 7th 1859.

By her will the decedent left certain legacies and annuities, and provided "the annuities in all instances to cease at the death of the annuitants, and to revert to my estate and be equally divided between my children, the issue," &c. The will appointed Charles Hewson her executor and trustee, and a codicil provided "in case my above-named executor and trustee, Charles Hewson, shall find that the sum left me by Mrs. Ricketts shall not be sufficient to cover the annuities and legacies above named, then shall a deduction be made, pro rata, in all the sums mentioned, with the exception of those left to Mrs. Emlen, Rosalie, and Medora Cox, to Mrs. Chapman, and to Dr. Addinell Hewson."

On October 25th 1863, Charles Hewson, as "executor and trustee" under the will of Mary R. Cox, presented his petition to the Orphans' Court, alleging that the personal property of the decedent's estate was insufficient to pay the legacies and annuities; that said legacies and annuities were claimed to be a charge on the real estate thereof and praying that citations might issue. A number of parties interested filed answers, but it did not appear that any was filed on behalf of the minor children of Mrs. Cox, although the docket entries which were put in evidence at the audit showed the following entry on the margin: "G. M. Wharton, attorney for James Markoe, guardian of Cox's minors et al." The proceeding appeared to have been amicable, although there was evidence that the question had been argued adversely on behalf of the minors by the same counsel who represented some of the legatees and annuitants. The matter was proceeded in to final decree on October 31st 1863, whereby the legacies and annuities were adjudged to be payable out of and chargeable upon the above estate, real and personal, and Mr. Markoe, the guardian of the

[Littleton's Appeal.]

minor children, was directed to pay over to Mr. Hewson, the executor, all the real and personal property of Mrs. Cox, the decedent, in his possession or control. No one took an appeal from this decree, and it was carried into effect, and Charles Hewson then assumed control of all the property of the decedent and her control therein. He paid the legacies and annuities in full, paid the taxes, including the income tax, and all the expenses, and accumulated a surplus. Upon Mrs. Neill attaining her majority he filed his first account, and at the audit thereof the children of Mrs. Cox objected to all credits for expenses in the Orphans' Court in 1863, and for counsel fees in the proceedings therein; to commissions charged on the real estate or its income; to the payment of legacies or annuities out of the real estate or its income, and to all payments of income tax.

The exceptions to the adjudication were dismissed and the adjudication confirmed, when this appeal was taken by Littleton, guardian, alleging that the court erred in their action.

On the 30th of December 1876, a petition was filed by R. R. Neill and his wife, in right of said wife, and by Littleton, guardian of the minor children of Mrs. Cox, praying for a bill of review of the proceedings in said estate, and that the court would make a decree that said legacies and annuities were not a charge upon the real estate. Citations issued, pleas were filed and demurrers, and the court sustained the latter and dismissed the petition on the ground that it was too late. From this decree the second appeal was taken.

*W. Wynne Wistar* and *E. Coppee Mitchell*, for appellants.— The authority of the Orphans' Court to afford relief by way of a bill of review has been exercised since its earliest foundation: Briggs's Appeal, 5 Watts 91. A review will be allowed, even after twenty years, in favor of persons under disabilities: Kay *v.* Watson, 17 Ohio 27 ; Lytton *v.* Lytton, 4 Id. 458.

The present bill is founded on an error in law, apparent on the face of the record, and is therefore not only clearly within the power of the court to allow, but appeals peculiarly to the exercise of such jurisdiction: Fitton *v.* Macclesfield, 1 Vern. 292 ; James *v.* Fish, 9 S. & M. 144 ; Daniels Ch. Pr. 1576. At the time the decree, sought to be reviewed, was entered, all the parties whose interests were to be affected were minors, the proceedings themselves were amicable, which in the case of infants, is sufficient of itself to induce a court of chancery to be especially careful. The legal guardian of the minor's interests perhaps was not bound to appeal, and therefore allowed the time for such a course to expire, and it would be a case of extreme hardship if on the attainment of majority by the infants, and when for the first time, the knowledge of the proceedings was brought to their notice, and the

[Littleton's Appeal.]

magnitude of their interests affected shown, there should be no redress permitted, on the simple ground that too long a time had elapsed. The lapse of time was no ground for refusing the prayer of the bill; for it is never allowed to affect the rights of an infant, or of a person under disabilities: Briggs's Appeal, *supra;* Whelen's Appeal, 20 P. F. Smith 401; Steward's Appeal, 35 Leg. Int. 60.

It is the duty of the executors, or their substitutes, to discharge legacies so far as funds come to their hands. For deficiencies the legatees must proceed themselves against those whose land is charged. We know of no law authorizing executors to attend to this duty: Field's Appeal, 12 Casey 11.

The income tax was in the nature of a direct tax, and was laid upon the income of every person receiving and enjoying an income, and to throw this burden upon those who do not receive or enjoy the income, for the relief of those who do, would appear to contravene both the words and object of the act. The payment is to be made by the persons whose income was taxed, not by those in whose care it might be found. How, then, under any pretext, can the custodian charge the tax assessed on the share of the estate belonging to A. on the share belonging to B.

*Pancoast* and *Chapman Biddle,* for appellees.—In 1863 the appellants were represented by a guardian and are concluded by the decree in that proceeding.

A bill of review, for errors apparent on the face of the record, will not lie after the time when a writ of error could be brought, for courts of equity govern themselves in this particular, by the analogy of the common law in regard to writs of error: Story's Eq. Pl., sec. 410, and cases cited in note 7 thereto; Dan. Ch. 1580, note 1, 4th Am. ed.; Kelly *v.* Lennon, 1 Jones and Latouche 305; George's Appeal, 2 Jones 262; Baggs's Appeal, 7 Wright 514. The Statute of Limitations is applied with the same effect in a court of equity as in a court of law; Hamilton *v.* Hamilton, 6 Harris 20; Bank *v.* Biddle, 2 Pars. 31; Randall *v.* Ely, 3 Brewst. 270; Todd's Appeal, 12 Harris 429; Waterman *v.* Brown, 7 Casey 161. The rules in chancery as to the cases in which a bill of review can be brought have been decided as applicable to petitions of review in the Orphans' Court: Riddle's Estate, 7 Harris 433; Hartman's Appeal, 12 Casey 70; Pennepacker's Appeal, 1 Leg. Gaz. Rep. 485.

The petition in this case was presented by one who while an executor was also a trustee, and the persons who were beneficially interested were thus parties to the proceedings.

The judgments of the Supreme Court were entered February 24th 1879,

[Littleton's Appeal.]

PER CURIAM.—(Opinion in Littleton's Appeal.)   It is very true that it was held by this court, in Field's Appeal, 12 Casey 11, that the proceeding in the Orphans' Court, against lands charged with legacies, must be by the legatees themselves, and that executors are not proper parties.   Yet evidently making the executor a party does not avoid the proceeding for want of jurisdiction if the legatees are in point of fact parties.   The court has general jurisdiction of the subject-matter, and any error of the court in the proceeding does not make void the decree.   From the will and codicil of Mrs. Cox, Charles Hewson was not only executor but also trustee, to receive and hold the property which was to constitute the fund from which not only the legacies but the annuities were to be paid, and he was therefore a proper party to institute the proceedings. We think, then, the decree of the Orphans' Court was conclusive. The minor children of Mrs. Cox, these appellants, appeared by guardian, and submitted to the decision of the court.   This dispenses with the necessity of considering whether the annuities were by the will of Mrs. Cox charged on her real estate.   The bill of review was not filed in time.   We think it clear that the income tax was properly charged on and paid by the trustee, and was not a charge against the annuitants, and that the court were perfectly right in decreeing that the trustee was entitled to hold the estate for the payment of the annuities.   The proper mode of proceeding to ascertain whether the balance in his hands is more than sufficient would seem to be under the Act of February 23d 1853, Pamph. L. 98.

> Decree affirmed, and appeal dismissed at the costs of the appellants.

PER CURIAM.—(Opinion in Neill's Appeal.)   We have decided in Littleton's Appeal the question of the jurisdiction of the Orphans' Court in the proceedings of 1863, and came to the conclusion that the decree in that proceeding was a valid and binding adjudication of the main point in controversy in this case.   The bill of review was too late in point of time.   It is stated in Story's Eq. Pl. 410, that such a bill will not lie after the time when a writ of error could be brought to a judgment, for courts of equity govern themselves by the analogy of the law in regard to writs of error, and he cites numerous authorities.   In New York it is held that a bill of review cannot be brought after the time allowed for an appeal: Boyd v. Vanderkemp, 1 Barb. Ch. R. 273.   Perhaps in this state it would be wise to follow the rule established by the legislature as to reviews of final decrees confirming the original or supplementary account of any executor, administrator, or guardian, by the Act of October 13th 1840, sect. 1, Pamph. L. 1841, pl. 1, which is five years.   This, however, would only be by analogy, for it is clear that the Act of 1840 is not directly applicable.   Yet

[Littleton's Appeal.]

in George's Appeal, 2 Jones 262, Mr. Justice BELL says, "should it become necessary with us to fix the time within which a review may be granted, the period will probably be much abridged by reference to our Act of 1791, prohibiting writs of error after seven years," (now reduced to two years by Act of April 1st 1874, Pamph. L. 50,) or it may be the Act of 1840, just mentioned.

Decree affirmed, and appeal dismissed at the costs of the appellant.

On motion a re-argument was ordered in both of these appeals, and they were re-argued on February 13th 1880, before SHARS-WOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

On the 1st day of March 1880, the judgment of the Supreme Court was again entered as follows:

PER CURIAM.—After a full consideration on re-argument, we see no reason to change the opinions filed heretofore in these cases.

Decrees affirmed, and appeals dismissed at the costs of the appellants.