## Spencer et al. *versus* Jennings et al.

1. It is within the exclusive jurisdiction of the Orphans' Court having jurisdiction of the accounts of the administrator of the estate of a decedent, to determine whether any money should be raised by sale or mortgage of the real estate of said decedent.

2. The Orphans' Court has no jurisdiction under the Act of April 18th, 1853, P. L. 503, the Price Act, to decree a sale or mortgage of a decedent's real estate for the payment of debts.

3. The purchase money realized by sale or mortgage of a decedent's real estate under the Act of April 18th, 1853, P. L. 503, the Price Act, is substituted in place of the real estate, and cannot be used for the payment of the debts of said decedent without a decree directing the same, made on application, in substantial compliance with the Act of March 29th, 1832, P. L. 198.

4. Where an Orphans' Court, having no jurisdiction, makes a decree directing the administrator of a decedent's estate, to mortgage the real estate of said decedent, which he does and a title to said real estate is derived through a sheriff's sale on a judgment on said mortgage, the said want of jurisdiction lies at the foundation of said title, and may be taken advantage of by the heirs of the decedent in an action of ejectment brought by them against those holding under a title derived from said sheriff's sale.

November 8th, 1886. Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., absent.

ERROR to the Court of Common Pleas No. 2 of *Allegheny county:* Of October Term, 1886, No. 188.

Ejectment by John Spencer and C. August Spencer, his wife, in right of said wife, and Margaret E. Spencer, Fred Waldschmidt, guardian of Henry Schumacher and Edward Schumacher, against John F. Jennings and Nicholas Freichel, for 115 acres of land in Plum township, Allegheny county. Plea, not guilty.

WHITE, J., filed the following opinion, overruling a motion for a new trial, from which the facts of the case as they appeared on the trial, appear.

Affirming defendants' point raises the question whether under all the evidence the plaintiffs are entitled to recover. The facts not being in controversy, there was nothing for the jury to pass upon.

[Spencer v. Jennings.]

Wm. A. Schumacher died in Butler county in 1858, leaving a widow and three minor children. The widow administered and took out letters in Butler county. The deceased owned a tract of land in Allegheny county. The widow presented a petition to the Orphans' Court of Allegheny county, December 15th, 1860, setting forth the above facts, and that the said "real estate is subject to the lien of debts due by said decedent and not of record, and that it is for the best interest and advantages of those interested therein that the same should be mortgaged for the purpose of raising a sufficient amount of money to pay off and discharge the debts due by the estate of said decedent," and praying the court for authority to mortgage the same for seven hundred dollars. The same day the court appointed a guardian, *ad litem*, for the minor children, and issued a citation upon him to answer within ten days. The same day the guardian answered that it was for the best interest of all concerned that the property should be mortgaged to raise that sum, and made affidavit that there were lien of debts not of record which required that sum of money. The same day the court made an order " that the said Julia C. Schumacher (the widow), have authority to execute her bond with a mortgage to secure the same on the real estate mentioned and described in the said petition, in manner and amount as prayed for in said petition, and that the money raised on said mortgage be applied according to law in discharge of such debts as may be liens on said real estate, and the remainder of said money, if any, she shall hold subject to the future order of this court."

The widow was required to give bond with sureties in the sum of $1,500, which she did.

The " liens not of record " were not described in any manner; there was no schedule of debts, and no order of the court of Butler county on the subject.

Two days later, December 17th, 1860, the mortgage was executed and acknowledged in open court. On the face of it, and as signed and acknowledged, it appears to be the individual mortgage of Julia Caroline Schumacher. The only thing to indicate otherwise is this clause inserted after the recital of title : " And this mortgage being made and executed by virtue of an order and decree of the Orphans' Court of Allegheny county, aforesaid, duly made and entered on the 15th day of December, 1860, on the petition of said Julia Caroline Schumacher, as will more fully appear by the proceedings of said court as recorded at number　　　　of October Term, A. D. 1860."

A *scire facias* was issued on the mortgage in 1866, served upon Julia C. Jones, (she was then married to W. H. Jones,)

judgment obtained, and the property sold to Joseph Logan, from whom the defendants derive title.

The question of law arising upon these facts are : 1st, had the Orphans' Court of Allegheny county jurisdiction to decree the mortgaging of the premises; 2d, were the proceedings regular and the mortgage valid as against the children of Wm. A. Schumacher?

The proceedings were intended to be under the Act of 18th April, 1853, (Price Act,) and it is contended by the defendants, that under that Act no schedule of debts was required, nor any order from the court of Butler county.

The clause in the Act of 18th April, 1853, relied upon to sustain the proceedings, is the clause in the 2d section, which enumerates the cases in which a decree for sale or mortgage may be made, and is in these words : " Whenever a decedent's real estate is subject to the lien of debts not of record."

What that clause means, or for what purpose inserted, is difficult to determine. · Before the passage of that Act all the debts of a decedent, whether of record or not, were liens upon his real estate, and under the Act of 29th March, 1832, the Orphans' Court had ample power to authorize the sale or mortgaging of the real estate for their payment. It was probably intended for some peculiar cases not embraced in the Act of 1832. It certainly was not intended to be a substitute for the Act of 1832, and to repeal all the wise restrictions and limitations of that Act. The two Acts being, *pari materia*, at least, so far as this case is concerned, they should be construed to harmonize with each other.

The Act of 1832 authorized the Orphans' Court having jurisdiction of the accounts of an executor or administrator, to decree a sale or mortgage of the real estate in that county, and where the real estate was situate in another county to make a decree authorizing the executor or administrator " to raise so much money as the said court may think necessary from real estate situated in such county," upon which the court of that county on proper application could order a sale or mortgage. And " section 33 " says : " No authority for the sale or mortgage of real estate, lying in the same or another county, should be granted until the executor, administrator, &c., shall have exhibited to the said court " a schedule of the real and personal estate, and a sworn statement of the debts.

None of these requirements were complied with in this case.

Even if the Orphans' Court of Allegheny county had jurisdiction, it is doubtful whether the decree or mortgage was in proper form to bind anything more than the widow's interest in the land.

If the case were sent back for a new trial and a verdict

[Spencer v. Jennings.]

given for defendants, the same question would arise as now. As the case will have to go to the Supreme Court in any event, it may as well go up in the present form as any other, and save further trouble and expense to the losing party. Therefore a new trial is refused.

During the trial the defendants made the following offer of testimony:

Defendants' counsel offers the record at No. 90, October T., 1860, Orphans' Court of Allegheny county, in the estate of Wm. A. Schumacher, deceased, for the purpose of showing a petition and order of court directing a mortgage to be made of the property in dispute and the acknowledgement of the mortgage in open court.

Objected to. First, because it does not appear any where in these proceedings that any application was made by Julia Caroline Schumacher, the administratrix of Wm. A. Schumacher, a resident of Butler county, and in which county she appears to have been appointed administratrix, to the Orphans' Court of Butler county, or any order made by said court permitting the raising of money by a mortgage upon the real estate in dispute or for any purpose whatever, that the application for the mortgaging of the property in dispute in the county of Allegheny, in the first instance without the sanction or authority of the court of the domicile, to wit, the court of Butler county, renders the proceedings and mortgage given thereunder without validity, and makes the action of the Orphans' Court of Allegheny county by reason thereof null and void. Second, the Orphans' Court of Allegheny county had no jurisdiction of the administratrix, and could acquire none, either under the Act of 1832 or 1853, to order the mortgaging of the said premises under said application, or for any other reason; that the Orphans' Court of Allegheny county had no authority to appoint a guardian *ad litem* of the heirs of Wm. A. Schumacher, deceased, for the purpose of ratifying or acquiescing in the jurisdiction of the Orphans' Court of Allegheny county in making such order and decree, which should be done under the law by the appointment of guardians who should give bond to the Orphans' Court of Butler or Allegheny county for such purpose; and third, as incompetent and irrelevant.

Objection overruled, exception and bill sealed. (Third assignment of error.)

Mr. *Jennings'* attorney for defendants, reads the petition made to the court, and offers in evidence record of mortgage made by Julia C. Schumacher, administratrix of the estate of Wm. A. Schumacher, dec'd, to J. M. Sowers, dated December

17th, 1860, and recorded same·day in Mortgage book, vol. 41, page 158, for the real debt of $700, with interest payable an-nually, on the property described in the writ of ejectment; this mortgage being made in pursuance of the decree of court which has just been read.    Objected to because

" 1. There is no such mortgage as is alleged by defendant in his abstract of title.

" 2. That there is a mortgage made by Caroline Augusta Schumacher, the widow herself, personally and not as adminis-tratrix of Wm. A. Schumacher, dec'd, and that the plaintiffs in this action cannot be bound thereby.

" 3. That the mortgage was never executed or acknowledged in accordance with the Act of Assembly.

" 4. It was not entitled to be recorded, and is not a matter of record under the statutes."

Objection overruled and bill sealed for plaintiff.    (Fourth assignment of error.)

The defendants presented the following point:

The defendants' counsel respectfully requests the court to charge that under all the evidence their verdict should be for the defendants.

BY THE COURT.—There are no questions of fact for the jury to pass upon.    The questions of law can better be heard and decided by the court *in banc*.    The point is affirmed and leave granted for plaintiffs to file motion for new trial.    (First assignment of error.)

In the general charge the court instructed the jury that their verdict should be for the defendants.    (Second assign-ment of error.)

Verdict for the defendants and judgment thereon, where-upon the plaintiffs took this writ, and filed assignments •of error as shown above.

*Robb* and *Fitzsimmons* for plaintiffs in error.—Under all the allegations of the petition, after giving the same the bene-fits of every intendment of law to be allowed in favor of its regularity, the court could·not and did not acquire jurisdiction of the matter.    Hence the action of the Orphans' Court of Allegheny county, in authorizing the mortgaging of said prem-ises, was irregular and void for want of jurisdiction.

The jurisdiction of any court, exercising authority over a subject, may be inquired into in every other court, when the proceedings of the former are relied on and brought before the latter by a party claiming the benefit of such proceedings: Elliott *et al. v.* The Lessee of Piersol *et al.*, 1 Peters, 328; Thompson *v.* Tolme *et al.*, 2 Peters, 167; Wilkinson *v.* Leland *et al.*, Id., 62.

No court, however great may be its dignity, can arrogate to

itself the power of disposing of real estate without the forms of law. It must obtain jurisdiction of the thing in a legal mode. A decree without notice would be treated as a nullity. And so must a sale of land be treated which has been made without an order or decree of court, though it may have ratified the sale: Shriver et al. v. Lynch et al., 2 How., 66; Pittsburgh v. Walter, 19 P. F. S., 366; Painter v. Henderson, 7 Barr, 48; Welty v. Puffner, 9 Id., 224; Keech v. Rhinehart, 10 Id., 242; Dixey's Executor v. Lenning, 13 Wr., 143; Ledom v. Lombairt, 30 P. F. S., 390.

Jurisdiction of the Orphans' Court is therefore the true test: Painter v. Henderson, 7 Barr, 52; Lockhart v. Johns, Id., 139; Keech v. Rhinehart, 10 Id., 242; McKee v. McKee, 2 H., 231; Torrance v. Torrance, 3 P. F. S., 510; Gallaher v. Collins, 7 Watts, 554; Scott on the Intestate Laws, 366–7.

The petition must set out facts necessary to give the court jurisdiction: Act of Assembly of March 29th, 1832, P. L., sec. 57; Act of Assembly of June 16th, 1836, P. L., sec.. 19; Swayne v. Lyons, 17 P. F. S., 439; Torrance v. Torrance, 3 Ibid., 511; Scott on the Intestate Laws, 366–7.

Courts of limited jurisdiction must not only act within the scope of their authority, but it must appear on the face of their proceedings that they did so, and if it does not so appear all their proceedings are *coram non judice:* Jones v. Jones, 2 Jones, 355; Gordon's Appeal, 12 Norris, 361.

The administrator has no right to apply to the Orphans' Court for an order of sale of or for right to mortgage real estate where the debts have lost their lien, nor does the court, on a petition showing such a state of facts, acquire jurisdiction to order a sale or mortgage: Pry's Appeal, 8 W., 253; Clauser's Estate, 1 W. & S., 215: Bremer v. Phillips, 9 W. & S., 21; Grice v. Kensey, 4 W. N. C., 208; Stovey's Estate, 14 Id., 406.

*W. K. Jennings* for defendants in error.—Our position affirmatively stated, is:

1. That the mortgage referred to was made by virtue of the jurisdiction vested in the Orphans' Court of Allegheny county by the Price Act.

2. That any irregularities in the proceedings in said court cannot be inquired into collaterally; and,

3. If they could, they have been cured by section 5, of the Act, which is as follows: " The title of purchasers under all such sales, mortgages or conveyances upon ground rent, shall be a fee simple title, indefeasible by any party or persons having a present or expectant interest in the premises, and be unprejudiced by any error in the proceedings of the court.

Mr. Justice TRUNKEY delivered the opinion of the court January 3d, 1887.

At the time Schumacher died he resided in the county of Butler, and letters of administration of his estate were granted to his widow by the Register of that county on November 11th, 1858. The administratrix, December 15th, 1860, presented her petition to the Orphans' Court of Allegheny county, representing that her letters were granted by the Register of Butler county; that the decedent died intestate, leaving a widow and three minor children who had no guardian; that he owned a tract of land in Allegheny county, and " that the said real estate is subject to the lien of debts due by said decedent, and not of record, and that it is for the best interest and advantage of those interested therein that the same should be mortgaged for the purpose of raising a sufficient amount of money to pay off and discharge the debts due by the estate of said decedent." On the same day the court appointed a guardian . *ad litem*, who immediately answered ; whereupon, the same day, the court granted the petition and decreed, among other things, " that the money raised on said mortgage be applied according to law to the discharge of such debts as may be liens on said real estate, and the remainder, if any, she hold subject to the further order of this court." And approved bond in $1,500.

The petition stated nothing as to the amount of debts, nor that the personal estate was insufficient to pay them, but it prayed a decree authorizing a mortgage for $700. She got that money, in due time the land was sold in satisfaction of the mortgage, and, after its payment, she received of the proceeds of sale $2,726. If the real object was to divest the minor children of their patrimony, no better way could have ,been devised, provided the court had jurisdiction.

It is so plain that the proceeding and decree were unauthorized by the Act of 1832, which provides for sale or mortgage of real estate by an administrator for payment of the debts of a decedent, and also prescribes the mode of procedure, that the defendants deny that said Act has anything to do with the case, and claim that the Orphans' Court of Allegheny county had jurisdiction under the " Act relating to the sale and conveyance of real estate."

The Act of 1853 declares that nothing therein contained shall be taken to repeal or impair the authority of any other Act of Assembly, authorizing the sale of real estate by decree of court or otherwise. Its chief object is to extend the power to sell real estate, and to avoid special legislation by enabling the courts to adjudicate matters relative to such sales after a full hearing of all parties; not to supersede the wholesome

[Spencer v. Jennings.]

statutory regulations, which had been already provided, for the sale or mortgage of real estate of decedents, or of minors, by administrators or guardians. The Act of 1853 contains no provision authorizing the court to decree the sale of the real estate of a decedent for the payment of his debts.

In Price on Act relating to sales of real estate, p. 97, it is said that sales may be made, "whenever a decedent's real estate is subject to the lien of debts not of record; that is, during the five years after his decease, for which time all his real estate is subject to the lien of all his debts; and theoretically so subject, though no debts be known to exist." The learned author did not conceive that, under that clause, the court could decree a sale for any purpose other than the discharge of the particular lien. The intent is obvious. Within five years after a decedent's death, the parties interested in his real estate may wish to sell or mortgage, discharged of all liens, and by virtue of this provision the court may decree the sale, and, thereafter, the debts will continue a lien on the money in place of the land. All the owners may be able to contract and convey within said period, but the land is subject to the lien of all debts of the decedent, and, to give the purchaser the land discharged from such lien, the decree is necessary. As respects this point, the case would be precisely the same were some of the owners minors, or, for other cause, unable to convey. At first the Act provided that, in all cases within its provisions, sales could be decreed discharging all liens; but, after some experience and observation, the supplement of March 3d, 1867, was enacted, providing that private sales, made by order of court, shall discharge the premises sold from the lien of debts of the decedent, except debts of record and debts secured by mortgage.

The defendants contend that under the Act of 1853, the Orphans' Court of Allegheny county had power to decree the sale of the decedent's real estate, which was subject to the lien of debts not of record, and that the title is unprejudiced by any error in the proceedings of the court. This cannot be denied, if the petition sets forth a case within the purview of the Act. But the petition affirmatively shows a case within the exclusive jurisdiction of the Orphans' Court of the county of Butler. The prayer is based on indebtedness of the estate. No other reason is given for the sale, or why money should be raised. The petition, though fatally defective under the Act of 1832, is for leave to mortgage the real estate of the decedent for the purpose of paying his debts, and for nothing else. True, it was stated that it would be for the best advantage of those interested in the land, that the same should be mortgaged for the purpose of raising sufficient money to pay off and discharge

4 AMERMAN—40

the debts, but that is no reason for any decree, except that money be raised to pay said debts either by sale or mortgage. The fact that the debts were not of record, does not change the nature of the petition. Had it stated that the debts were of record, its purpose to provide for their payment would have been no more clearly expressed. Upon proper application under the Act of 1853, the court may decree a public or private sale of land, and a public sale will discharge the lien of the decedent's debts of record, and not of record, but it has no power, under this Act, to make a decree upon a petition by the administrator, merely to provide for the payment of the debts of the decedent.

To sustain the proceeding the defendants refer to Hoover's Appeal, 55 Pa. St., 337, where it was said that the petition sets forth sufficient ground for a decree of sale. There, the petition stated that the real estate of the decedent was subject to the lien of a judgment, and other debts not of record; that all the heirs, except one, had agreed with a purchaser for the sale of said real estate; that it would be greatly to the interest and advantage of all concerned, and asked a rule on the heir who refused to agree, to appear and show cause why the sale should not be confirmed. The petition was by the administrator, but it was in the interest of the heirs who had agreed to sell, and who could not convey the land discharged of the lien, without the decree. It was not an administrator's petition for an order to sell real estate for payment of the debts of a decedent. Had the sale been decreed, the money would have been substituted in place of the land, and the administrator would have had no right to use a dollar of it, without first obtaining a decree made on application in substantial compliance with the Act of 1832. The land having been converted, it would only be necessary to show insufficiency of personal estate, in the proper mode, to obtain a decree by the court having jurisdiction of the accounts of the administrator, authorizing him to use so much of the money as necessary for payment of the decedent's debts.

The Orphans' Court of Allegheny county had no power to decree that the money raised by the mortgage should be applied to the payment of the debts that were liens on the real estate.

It was solely within the province of the court that had jurisdiction of the accounts of the administratrix, to determine whether any money should be raised by sale or mortgage of real estate, by the administratrix. No other court could consider that question. The Act of 1853, declares that the mortgage money shall in all respects be substituted for the real estate mortgaged, as regards the enjoyment and ownership thereof, after the payment of liens, and shall be held for the use of the same persons, and for the same estate and interest,

as the real estate mortgaged had been held.   Had the mortgage been valid, none of the money could have been lawfully applied to payment of liens, save upon the decree of the proper court. That decree could not have been made without application showing that the personal assets were insufficient.

The defect of want of jurisdiction to make the decree lies at the foundation of the title set up by the defendants, of which they were bound to take notice.

> Judgment reversed, and a *venire facias de novo* awarded.